**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| RUBEN MARTINEZ-CASTRO, | ) | CASE NO. 1:20-CV-02153-CEF |
| | ) | |
| Petitioner, | ) | JUDGE CHARLES E. FLEMING |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| KENNETH BLACK, Warden, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Respondent. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.     INTRODUCTION

Pro se Petitioner, Ruben Martinez-Castro ("Mr. Martinez-Castro"), seeks a writ of habeas

corpus under 28 U.S.C. § 2254 and asserts one ground for relief. (ECF No. 1.) On February 4, 2015,

Mr. Martinez-Castro was indicted on the following charges: (1) trafficking in drugs, with a Major

Drug Offender specification (Count One); (2) possession of drugs, with a Major Drug Offender

specification (Count Two); (3) operating a vehicle without a valid license (Count Three); and (4)

possession of drug paraphernalia (Count Four).  After a two-day bench trial in September 2017, the

trial court found Mr. Martinez-Castro guilty on all four substantive counts, but not guilty on the

Major Drug Offender specifications on Counts One and Two.  The trial court subsequently sentenced

Mr. Martinez-Castro to eight years in prison.

Respondent, Warden Kenneth Black ("Warden"), filed an answer/ return of writ on

February 3, 2021. (ECF No. 7.)[1]  Mr. Martinez-Castro filed a traverse on March 2, 2021. (ECF No.

---

[1] My Report and Recommendation ("R&R") dated November 3, 2022 recommended in relevant part that Kenneth Black, the current warden of Richland Correctional Institution, should be substituted as the proper Respondent in this case.  (ECF No. 15.)  This Court adopted the R&R on December 22, 2022, and the case caption now reflects that the Respondent is Mr. Black.

8.)  This matter was referred to me under Local Rule 72.2 to prepare a report and recommendation on Mr. Martinez-Castro's petition and other case-dispositive motions.  For the foregoing reasons, I recommend that this Court DISMISS and/or DENY Mr. Martinez-Castro's petition.  I further recommend that this Court not grant Mr. Martinez-Castro a certificate of appealability.

## II.    RELEVANT FACTUAL BACKGROUND

For purposes of habeas corpus review of state court decisions, a state court's findings of fact are presumed correct and can be contravened only if the habeas petitioner shows, by clear and convincing evidence, that the state court's factual findings are erroneous. 28 U.S.C. § 2254(e)(1); *Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001). This presumption of correctness applies to factual findings made by a state court of appeals based on the state trial court record. *Mitzel*, 267 F.3d at 530. The Ohio Court of Appeals for the Ninth District summarized the facts as follows on direct appeal:

{¶2} On December 9, 2014, a Lorain police officer initiated a traffic stop of a vehicle driven by Mr. Martinez-Castro.  After the officer noted the odor of burnt marijuana in the vehicle and determined that Mr. Martinez-Castro was driving with a suspended license, he placed Mr. Martinez-Castro in his cruiser. A second officer deployed his K-9 around the vehicle. The K-9 alerted to the presence of narcotics, and the officers conducted a search of the vehicle's interior, during which they discovered one plastic baggie that contained a white, powdery substance in plain sight on the console. They also found other baggies and a pill bottle that contained plant matter concealed in a plastic grocery bag tied to the undercarriage of the driver's seat. One baggie contained filler that is not a controlled substance. Several others contained powder cocaine mixed with filler.

{¶3} Mr. Martinez-Castro was charged with trafficking in drugs in violation of R.C. 2925.03(A)(2) and possession of drugs in violation of R.C. 2925.11(A), each with a specification alleging him to be a major drug offender. He was also charged with operating a motor vehicle without a valid license in violation of R.C. 4510.12(A)(1) and possession of drug paraphernalia in violation of R.C. 2925.14(C)(1). The trial court continued the case until the Ohio Supreme Court resolved a certified conflict regarding whether the weight of cocaine must be measured by excluding the weight of filler materials.

{¶4} Following a bench trial, the trial court found Mr. Martinez-Castro guilty of all of the charges alleged in the indictment, but not guilty of the major drug offender specifications. The trial court continued sentencing so that a presentence investigation could be completed, but Mr. Martinez-Castro failed to appear. Nine months later, after Mr. Martinez-Castro was

located by his bonding company, he appeared for sentencing. The trial court merged his convictions for trafficking in drugs and possession of drugs and sentenced him to eight years in prison. The trial court also sentenced him to jail terms of six months and thirty days, respectively, for his misdemeanor convictions, both to run concurrently with his prison term, and fined him $ 10,000. Mr. Martinez-Castro filed this appeal.

*State v. Martinez-Castro,* No. 18CA011361, 2019 WL 1430601 (9th Dist. March 29, 2019).

## III.    PROCEDURAL HISTORY

### A.    <u>State Court Conviction</u>

On February 4, 2015, Mr. Martinez-Castro was indicted on the following charges: (1) trafficking in drugs, with a Major Drug Offender specification (Count One); (2) possession of drugs, with a Major Drug Offender specification (Count Two); (3) operating a vehicle without a valid license Count Three); and (4) possession of drug paraphernalia (Count Four) (ECF No. 7-2, Exhibit 1.)

On October 9, 2015, Mr. Martinez-Castro, through counsel, filed a motion to suppress all evidence obtained as the result of an alleged unlawful stop and/or search by the Lorain County Police Department of the vehicle Mr. Martinez-Castro was driving.  (*Id.,* Exhibit 2.)  The State filed an objection to the motion to suppress on December 3, 2015.  (*Id.,* Exhibit 3.)  After a hearing on January 28 and February 25, 2016, the trial court issued a written ruling denying the motion to suppress.  (*Id.,* Exhibit 4.)

On April 28, 2016, Mr. Martinez-Castro, through counsel, filed a motion in limine to exclude the State from any and all mention regarding the weight of the cocaine because it contained "filler"; specifically, Mr. Martinez-Castro argued that it was not an accurate measurement of the actual amount of cocaine possessed or trafficked by him. (*Id.,* Exhibit 5.) The trial court continued the case until the Ohio Supreme Court resolved a certified conflict regarding whether the weight of cocaine must be measured by excluding the weight of filler materials.

In September 2017, Mr. Martinez-Castro voluntarily signed a waiver of his right to a jury trial. (*Id.,* Exhibit 6.) The case proceeded to a bench trial on September 18, 2017 and September 19,

2017.  (*Id.,* Exhibit 8.) Prior to opening statements, Mr. Martinez-Castro, through counsel, orally reiterated the motion in limine.  (*Id.,* Exhibit 8, PageID # 90.) The trial court denied the motion in limine based upon the Ohio Supreme Court's decision in *State of Ohio v. Gonzalez,* 2017-Ohio-777 (2017) ("*Gonzalez II*").

Following a bench trial, the trial court issued a Judgment Entry setting forth its factual findings and rulings on the pending charges.  First, the trial court held that the State had not proven the Major Drug Specification relative to Counts One and Two beyond a reasonable doubt, setting forth its reasoning as follows:

> This Court, after careful and deliberate view of all of the evidence, and in consideration of the applicable law, believes that there is a possibility or even a probability that some of the facts alleged in the Indictment may have occurred relative to Count One, the Major Drug Offender ('MDO') specification and Count Two's MDO Specification.  Nevertheless, the evidence presented does not rise to the mandated legal standard of proof of guilty beyond a reasonable doubt required to sustain a conviction of guilty as to either MDO Specification.

(ECF No. 7-2, Exhibit 8, PageID # 92.)

However, the trial court found that the State had proven Counts One, Two, Three, and Four beyond a reasonable doubt. As to the trafficking in drugs charge (Count One), the trial court held:

> The Ninth District has held that the convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment. *State v. Fry*, 2007-Ohio-3240, 9th Dist. Summit, Case No. 23211 at 150. *See also State v. Lyles* (1989), 42 Ohio St.3d 98, 100 (drug paraphernalia is relevant in trafficking prosecution).
>
> Defendant had a significant amount of illegal drugs in close proximity to his person, had drug paraphernalia including baggies and a pill bottle in close proximity, had some of the drugs in plain view on the console, had all of the drugs similarly bundled, and had quinine, a "cutting" or 'mixing' agent used with cocaine.

(*Id.,* PageID # 93.)  As to the possession of drugs charge (Count Two,) the trial court held:

> "Possession may be actual or constructive." * * * Constructive possession has been defined as "'knowingly [exercising] dominion and control over [the drugs], even though [they] may not be within his immediate physical possession.'" * * * "Furthermore, ownership need not be proven to establish constructive possession. * * *Circumstantial evidence is sufficient to support the elements of constructive possession." *State v. Jenks* (1991), 61 Ohio St.3d 259,

272-73; *Id.* at
¶ 47.

Moreover, the Ohio Supreme Court has held that knowledge of contraband in one's home is sufficient to show constructive possession. * * * Stating "[i]t would have been difficult, if not impossible, for appellant not to have been aware of any activity going on in the apartment." Id at ¶ 48, citing *State v. Hankerson* (1982), 70 Ohio St.2d 91.

In *Hankerson*, the Supreme Court relied on the homeowner's dominion and control over the premises, the facts of normal home occupancy, and testimony that the contraband was in plain view to conclude that the jury had sufficient circumstantial evidence to infer that the appellants knew that contraband was located in the home. *Id.* at ¶ 92.

Defendant's vehicle smelled of burnt marijuana, had drugs in plain view, and he was in close proximity to the drugs found under his seat at the time it was searched.  And, the drugs in plain view were wrapped identically to those secreted under the seat.  Therefore, "[i]n accordance with Hankerson, [this Court is] entitled to infer from the [Defendant's] dominion and control of the vehicle and the facts of normal vehicular occupancy plus the presence of drugs directly next to the Defendant that he had knowledge that the illegal drugs were in the car, including the drugs under the seat. Such knowledge demonstrates constructive possession." *Fry* at ¶ 49.

(*Id.,* PageID # 94.)   The trial court also acknowledged as to Count Two that Mr. Martinez-Castro "posited the theory that the drugs belonged to the actual owner of the vehicle (or maybe even someone else)."  However, the trial court recognized that "the Defendant's convictions may withstand evidence that is susceptible to some plausible theory of innocence." *Id.* (citing *State v. Figueroa,* 9th Dist. No. 22208, 2005-Ohio-1132, at ¶ 7; *Fry* at ¶ 49.)

The trial court merged Mr. Martinez-Castro's convictions for trafficking in drugs and possession of drugs in Counts One and Two and sentenced Mr. Martinez-Castro to eight years in prison. The trial court also sentenced Mr. Martinez-Castro to jail terms of six months and thirty days, respectively, for his misdemeanor convictions on Counts Three and Four, both to run concurrently with his prison term, and fined him $ 10,000.

### B.    Direct Appeal

Mr. Martinez-Castro, through counsel, timely appealed and asserted the following assignments of error: (1) Mr. Martinez-Castro's constitutional rights were violated by the trial court's

failure to find the weight of the actual cocaine; and (2) Mr. Martinez-Castro's conviction was against the weight and sufficiency of the evidence.  On March 29, 2019, the Ninth District Court of Appeals affirmed Mr. Martinez-Castro's conviction.

On October 1, 2019, the Ohio Supreme Court declined to accept jurisdiction of the appeal, pursuant to S.Ct.Prac.R. 7.08(B)(4).  (*Id.,*

### C. <u>Delayed Application to Reopen Appeal – App. R. 26(B)</u>

On October 29, 2019, Mr. Martinez-Castro filed a delayed application to reopen his direct appeal based on appellate counsel's alleged ineffective assistance for failure to challenge the search. As cause for his untimely filing, Mr. Martinez-Castro argued that appellate counsel unsuccessfully pursued an appeal to the Ohio Supreme Court.  The Ninth District Court of Appeals denied the delayed application for reopening, holding that "an appeal to the Supreme Court, however, does not excuse untimely filing under App.R. 26(B)(1)."

### D. <u>Habeas Petition</u>

Mr. Martinez-Castro raises the following single ground for habeas relief:

**GROUND ONE:** The trial court's verdict was entered upon insufficient evidence in violation of the Due Process Clause of the 14th Amend. to the U.S. Const.

**Supporting Facts:** The state presented no evidence establishing a nexus between him and the plastic bags found inside the center console and tied to the undercarriage of the driver's seat, by showing that Petitioner had knowledge, dominion, or control of the bags.  Petitioner denied any knowledge of the plastic bags and he did not own the vehicle.  The state did not find Petitioner's fingerprints on the bag.

(ECF No. 1, PageID # 5.)

## IV. STANDARDS OF REVIEW AND GOVERNING LAW

### A. <u>Jurisdiction</u>

28 U.S.C. § 2254(a) authorizes this court to entertain an application for a writ of habeas corpus on "behalf of a person in custody pursuant to the judgment of a State court only on the ground

that he is in custody in violation of the Constitution or laws or treaties of the United States." A state prisoner may file a § 2254 petition in the "district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him[.]" 28 U.S.C. § 2241(d). The Lorain Court of Common Pleas of sentenced Mr. Martinez-Castro, and the Court takes judicial notice that Lorain County is within this Court's geographic jurisdiction.

### B.     Exhaustion and Procedural Default

Under AEDPA, state prisoners must exhaust all possible state remedies, or have no remaining state remedies, before a federal court can review a petition for a writ of habeas corpus on the merits. 28 U.S.C. § 2254(b) and (c); *see also Rose v. Lundy*, 455 U.S. 509 (1982). This entails giving the state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In other words, "the highest court in the state in which the petitioner was convicted [must have] been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). The exhaustion requirement, however, "refers only to remedies still available at the time of the federal petition." *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982). It "does not require pursuit of a state remedy where such a pursuit is clearly futile." *Wiley v. Sowders*, 647 F.2d 642, 647 (6th Cir. 1981).

Procedural default is a related but "distinct" concept from exhaustion. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). It occurs when a habeas petitioner fails to obtain consideration of a federal constitutional claim by state courts because he failed to: (1) comply with a state procedural rule that prevented the state courts from reaching the merits of the petitioner's claim; or (2) fairly raise that claim before the state courts while state remedies were still available. *See generally Wainwright v. Sykes*, 433 U.S. 72, 80, 84-87 (1977); *Engle*, 456 U.S. at 125 n.28; *Williams*, 460 F.3d at 806. In

7

determining whether there has been a procedural default, the federal court again looks to the last explained state-court judgment. *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991); *Combs v. Coyle*, 205 F.3d 269, 275 (6th Cir. 2000).

A claim is fairly presented when it has been asserted as a federal constitutional issue at every stage of the state court review process. *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010); *Williams*, 460 F.3d at 806.

Procedural default, however, can be excused and will not preclude consideration of a claim on federal habeas review if the petitioner can demonstrate: (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law;" or (2) "failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A "fundamental miscarriage of justice" can occur only when the procedurally defaulted claim – supported by new reliable evidence not presented at trial – would establish that the petitioner was "actually innocent" of the offense. *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006).

### C. <u>Cognizable Federal Claim</u>

Under 28 U.S.C. § 2254(a), a state prisoner may challenge his custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A petitioner's claim is not cognizable on habeas review if it "presents no federal issue at all." *Glaze v. Morgan,* No. 1:19-CV-02974, 2022 WL 467980, at *4 (N.D. Ohio Jan. 18, 2022) (quoting *Bates v. McCaughtry*, 934 F.2d 99, 101 (7th Cir. 1991)). Thus, "errors in application of state law ... are usually not cognizable in federal habeas corpus." *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007) (citing *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983)); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.").

8

A federal habeas court does not function as an additional state appellate court; it does not review state courts' decisions on state law or procedure.  *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988) (citing *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987)).  Instead, "federal courts must defer to a state court's interpretation of its own rules of evidence and procedure" in considering a habeas petition. *Id.* (quotation omitted).  Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).

### D.  AEDPA Standard of Review

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), provides in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

 (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(*Id.*)

To determine whether relief should be granted, the Court must use the "look-through" methodology and look to the "last explained state-court judgment" on the petitioner's federal claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) ("The essence of unexplained orders is that they say nothing. We think that a presumption which gives them no effect—which simply 'looks through' them to the last reasoned decision—most nearly reflects the role they are ordinarily intended to play."); *Wilson v. Sellers*, 138 S. Ct. 1188, 1193 (2018) ("We conclude that federal habeas law employs a 'look through' presumption.").

"A decision is 'contrary to' clearly established federal law when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Otte v. Houk*, 654 F.3d 594, 599 (6th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000)). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). "[U]nder the unreasonable application clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "The unreasonable application clause requires the state court decision to be more than incorrect or erroneous —it must be "objectively unreasonable." *Id.*

Under § 2254(d)(2), "when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Burt v. Titlow*, 571 U.S. 12, 18 (2013) (quoting 28 U.S.C. § 2254(d)(2)). A state court decision is an "unreasonable determination of the facts" under § 2254(d)(2) only if the trial court made a "clear factual error." *Wiggins v. Smith*, 539 U.S. 510, 528 (2003). A state court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Wood v. Allen*, 558 U.S. 290, 301 (2010). Even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's ... determination." *Rice v. Collins*, 546 U.S. 333, 341-42 (2006). The prisoner bears the burden of rebutting the state court's factual findings "by clear and convincing evidence." *Burt*, 571 U.S. at 18 (citing 28 U.S.C. § 2254(e)(1)).

For state prisoners, the § 2254(d) standard "is difficult to meet... because it is meant to be."

*Harrington v. Richter*, 562 U.S. 86, 102 (2011). This is because, "[a]s amended by AEDPA, § 2254(d) is meant only to stop short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings." *Id.* at 103. "It preserves authority to issue the writ in cases where there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents" and "goes no further." *Id.* Thus, in order to obtain federal habeas corpus relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

## V.    ANALYSIS

### A. <u>Ground One: Sufficiency of the Evidence</u>

Mr. Martinez-Castro, pro se, contends in his petition that his convictions violate the Due Process Clause of the Fourteenth Amendment because they are not supported by sufficient evidence. (ECF No. 1, PageID # 5.) Specifically, Mr. Martinez-Castro argues that "the state presents no evidence establishing a nexus between him and the plastic bags found inside the center console and tied to the undercarriage of the driver's seat, by showing that Petitioner had knowledge, dominion, or control over the bags." (*Id.*) Moreover, Mr. Martinez-Castro states that he denied any knowledge of the plastic bags, he did not own the vehicle, and the State did not find his fingerprints on the bag. (*Id.*) Relying on Sixth Circuit and Ohio case law, Mr. Martinez-Castro argues in his traverse that "the Ohio trial court and Court of Appeals have thereby instituted an untenable strict-liability regime for constructive possession under R.C. 2925.03(A)(2) and 2925.11(A) by finding [him] guilty of constructive possession from mere proximity to the plastic bags." (ECF No. 8, PageID # 506.) Finally, Mr. Martinez-Castro argues in his traverse that the State did not establish the "knowingly" element set forth in R.C. §§ 2925.03(A)(2) and 2925.11(A). (*Id.*, PageID # 510-17.)

The Warden argues in its answer that this Court should deny Mr. Martinez-Castro's Ground

One claim because Mr. Martinez-Castro's constructive possession can be – and was – established by the circumstances of the location and visibility of contraband in plain view on the center console. For the reasons set forth below, the Warden's arguments are well-taken.[2]

Challenges to a state court conviction based on the sufficiency of the evidence are properly cognizable in a federal habeas corpus petition. *See Jackson v. Virginia*, 443 U.S. 307, 321 (1979). The Sixth Circuit has recognized that, after AEDPA, federal courts reviewing state habeas claims accord a double layer of deference:

> ***First***, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. *See United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir.1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. ***Second***, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. *See* 28 U.S.C. § 2254(d)(2).

*White v. Steel,* 602 F.3d 707, 710 (6th Cir. 2009) (quoting *Brown v. Konteh,* 567 F.3d 191, 205 (6th Cir. 2009) (emphasis added)).  Significantly, under the *Jackson* standard, a habeas petitioner "who challenges the sufficiency of the evidence to sustain his conviction faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

On direct appeal, the state appellate court reasonably rejected Mr. Martinez-Castro's argument that there was insufficient evidence to support his convictions, setting forth its reasoning as follows:

---

[2] The Warden does not argue that Mr. Martinez-Castro procedurally defaulted or failed to exhaust his due process claim. After careful consideration, I also conclude that Mr. Martinez-Castro properly exhausted his claim and did not procedurally default on it.

{¶9} "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams*, 9th Dist. Summit No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins* at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility, and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. Id.

{¶10} R.C. 2925.11(A), which prohibits drug possession, provides that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.03(A)(2), which prohibits trafficking, provides that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person." The act of possession may be implied in trafficking in drugs under R.C. 2925.03(A)(2). *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, ¶ 24, overruling recognized by *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995 (observing that "common sense and logic tell us that in order to prepare a controlled substance for shipping, ship it, transport it, deliver it, prepare it for distribution, or distribute it, one must necessarily also possess it.").

{¶11} "Possession" is defined as "having control over a thing or substance." R.C. 2925.01(K).2 Possession "may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." *Id.* Nonetheless, possession may be either actual or constructive. State v. Hilton, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 16, citing *State v. McShan*, 77 Ohio App.3d 781, 783 (8th Dist. 1991). "'Constructive possession exists when an individual knowingly exercises dominion and control over an object, even though that object may not be within his immediate physical possession.'" *State v. Jackson*, 9th Dist. Summit No. 28691, 2018-Ohio-1285, ¶ 38, quoting *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus. Presence in the vicinity of an item, standing alone, does not establish constructive possession, but other factors taken together—such as proximity to the item in plain view or knowledge of its presence—may be circumstantial evidence. *State v. Owens*, 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23.

{¶12} In this case, Officer Jeremy Gray, who initiated the traffic stop of Mr. Martinez-Castro's vehicle, testified that he and another officer searched the vehicle driven by Mr. Martinez-Castro. They found one "clear, plastic baggie of a white, powdery substance * * * right there on the center console." Officer Gray affirmed that this baggie was in a readily observable location in the vehicle. He also testified that they found several other baggies underneath the driver's seat inside a plastic grocery bag. Officer Gray noted that the grocery bag was tied to the seat frame using the bag's handles, and he observed that tying the bag in that manner would take no more effort than "tying a lace on a shoe." From this evidence, a finder of fact could reasonably conclude beyond a reasonable doubt that Mr. Martinez-Castro, who sat in the driver's seat next to the center console and immediately above where

most of the cocaine was concealed, knowingly exercised dominion and control over it so as to demonstrate constructive possession.

Upon careful review of the record, I find that the Ohio Court of Appeals fully considered and rejected Mr. Martinez-Castro's sufficiency of the evidence claim.  In doing so, the Ohio Court of Appeals cited to *State v. Jenks,* 61 Ohio St.3d 259 (1991), an Ohio Supreme Court case identifying and applying the *Jackson* standard to a claim of insufficient evidence.  *Id.* at 259-60.  The issue here is whether the Ohio Court of Appeals' application of the *Jackson* standards was reasonable.

I find that Mr. Martinez-Castro's convictions were supported by sufficient evidence and reject his argument that the State failed to establish a nexus between Mr. Martinez-Castro and the drugs found in the vehicle.  Applying the first layer of the "double layer of deference," *White*, 602 F.3d at 710, and viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  The Ninth District explicitly acknowledged that mere presence standing alone does not establish constructive possession, and it also recognized that "other facts taken together – such as proximity to the item in plain view or knowledge of its presence – may be circumstantial evidence." *Martinez-Castro,*  (citing *State v. Owens,* 9th Dist. Summit No. 23267, 2007-Ohio-49, ¶ 23.)  The Ninth District here held that such circumstantial evidence of constructive possession included: (1) officers found a clear, plastic baggie of cocaine on the center console, and the fact that the baggie was readily observable undermines Mr. Martinez-Castro's argument that he was unaware that there were drugs stowed in the vehicle; and (2) officers found several other baggies underneath the driver's seat inside a grocery bag, and one officer testified that tying the bag in that manner would take no more effort than "tying a lace on a shoe."

The trial court also found, in addition to the facts identified by the Ninth District and set forth above, that the following facts demonstrated constructive possession: (1) drug paraphernalia

14

including baggies and a pill bottles were found in close proximity to Mr. Martinez-Castro, the driver and sole occupant of the vehicle; (2) the drugs in plain view were wrapped identically to those secreted under the seat; and (3) Mr. Martinez-Castro's vehicle smelled of burnt marijuana.  And while Mr. Martinez-Castro argues that the Ninth District Court of Appeals never addressed the "knowingly" element of Counts One and Two, the trial court did in fact so in its [Judgment]:

> Therefore, "[in] accordance with *Hankerson,* [this Court is] entitled to infer from the [Defendant's] dominion and control of the vehicle and the facts of normal vehicular occupancy plus the presence of drugs directly next to the Defendant that he had knowledge that the illegal drugs were in the car, including the drugs under the seat.  ***Such knowledge demonstrates constructive possession.***"  *Fry* at ¶ 49.

(ECF No. 7-2, Exhibit 8, PageID # 94) (Emphasis added).  Therefore, Mr. Martinez-Castro failed to establish that the trial court's ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(2).

Mr. Martinez-Castro acknowledges in his traverse that "a writ of habeas corpus may be issued for evidence insufficiency only if the state court adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, ***as determined by the Supreme Court of the United State***s…"  (ECF No. 8, PageID # 504, citing 28 U.S.C. § 2254(d)(1)).  As set forth above, "[c]learly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme] Court's decisions."  *White v. Woodall*, 572 U.S. 415, 419 (2014) (quotations and citations omitted). But while Mr. Martinez-Castro relies on Sixth Circuit and Ohio state case law to argue that the Ninth District erred, he fails to cite in support of his position any clearly established federal law as determined by the U.S. Supreme Court.

In any event, Mr. Martinez-Castro's citation to Sixth Circuit and Ohio cases (at ECF No. 8, PageID#s 505-10) is unavailing because these cases are readily distinguishable from the instant case. For example, *United States v. Newsom,* 452 F.3d 593 (6th Cir. 2006), and *United States v. Bailey,*

553 F.3d 940 (6th Cir. 2009), apply federal standards in reviewing federal criminal convictions involving constructive possession.  Conversely, Mr. Martinez-Castro here challenges his state law convictions under Ohio law.

Mr. Martinez Castro's reliance on *United States v. Catching,* 786 F. App'x 535 (6th Cir. 2019), is also unavailing.  In *Catching,* the district court held a hearing to determine whether the defendant had violated the terms of his federal supervised release by trafficking marijuana in violation of Kentucky law.  *Id.* at 536-37. In *Catching,* the marijuana was discovered in two separate traffic stops.  *Id.* at 537. The defendant and a woman were together in the car during both stops. *Id.* During the first stop where the defendant was the driver, officers located two 2.5-ounce Planter's cashew containers on the floorboard below the back seat of the vehicle.  *Id.* Inside the first container was a clear plastic bag that held 50 buds of marijuana.  *Id.* The second container contained only marijuana residue and the odor of marijuana.  *Id.* Additionally, officers found approximately $2,100 in the console between the driver and passenger seat, and approximately $291 on the defendant's person.  *Id.* During the second stop, the defendant was the passenger in the rental car, and the woman was the driver.  *Id.* Officers found a large amount of money under the front passenger seat where the defendant was sitting at the time, but no marijuana. *Id.* at 538.

The defendant was consistently adamant at the revocation hearing that the marijuana in the rental car was not his, and he argued that it instead belonged to the woman accompanying him in the car.  *Id.* at 538.  The woman, on the other hand, took inconsistent positions regarding whose marijuana was found in the vehicle.  *Id.*  At first, she maintained in an affidavit that the drugs belonged to her, but she later recanted and said the drugs were not hers – though at the revocation hearing the woman never indicated whether the drugs belonged to the defendant or a third party. *Id.* The district court found that the government met its burden to establish by a preponderance of the evidence that the defendant trafficked in marijuana in violation of the terms of his supervised release.

16

*Id.* at 539.  The district court then revoked the defendant's supervised release and imposed a sentence of 60 months imprisonment. *Id.*

The Sixth Circuit reversed the defendant's conviction, holding that there was no other incriminating evidence beyond mere presence that provided a nexus between the defendant and the marijuana to tip the scale in favor of finding that the defendant exercised dominion or control over the drugs.  *Id.* at 541.  But unlike the defendant in *Catching,* there is significant "other incriminating evidence" beyond mere presence here that provided a nexus between Mr. Martinez-Castro and the drugs.  As set forth above, this other incriminating evidence included:  (1) officers found a clear, plastic baggie of cocaine in plain view on the center console; (2) drug paraphernalia including baggies and pill bottles were found in close proximity to Mr. Martinez-Castro, the driver and sole occupant of the vehicle; (3) the drugs in plain view were wrapped identically to those secreted under the seat; and (4) Mr. Martinez-Castro's vehicle smelled of burnt marijuana.

Mr. Martinez-Castro's citation (at ECF No. 8, PageID# 509) to *State v. Devaughn,* 1st Dist. No. C-180586, 2020 WL 914952, 2020-Ohio-651 (Feb. 26, 2020) is also unavailing because the facts of that case are readily distinguishable from the instant case.  In *Devaughn*, the First District Court of Appeals recognized that "for constructive possession to exist, the person must be conscious of the object.  Otherwise, a conviction could be based upon drugs placed by another." *Id.* at ¶ 32. The *DeVaughn* court reversed the defendant's drug convictions based on its finding that the State failed to establish dominion and control over the drugs.  *Id.* at ¶¶ 35-37; 41. The *Devaughn* court found that there was no evidence that the defendant had ever driven the car or possessed the keys to the car where the drugs were found; rather, an officer merely saw the defendant lean into the car. *Id.* at ¶¶ 35-37.  Unlike the defendant in *Devaughn,* however, Mr. Martinez-Castro was driving the car when officers found the drugs.  And the location of the cocaine in plain view on the car's center console, the drug paraphernalia including baggies and pill bottles found in close proximity to Mr.

Martinez-Castro, and the fact that the drugs in plain view were wrapped identically to those secreted under the seat belie Mr. Martinez-Castro's contention that – as the sole occupant of the car - he was not conscious of the drugs.

Mr. Martinez-Castro's reliance (at ECF No. 8, PageID # 510) on *State v. Williams,* 4th Cist. No. 03CA2736, 2004-Ohio-1130 (March 10, 2004) to support his argument that the trial court found him guilty of constructive possession and trafficking in drugs from mere proximity is also unavailing. In *Williams,* the appeals court – despite the fact that the defendant was not the sole occupant of the vehicle - affirmed the defendant's conviction in part because: (1) "officers discovered the marijuana in the center console [of the vehicle], within close proximity to [the defendant], *i.e.,* he had direct access to it"; (2) the marijuana was lying directly on top of a receipt bearing the defendant's name; and (3) the vehicle smelled of burnt marijuana. *Id.* at ¶ 26.  Here, officers also discovered the drugs found in the vehicle driven by Mr. Martinez-Castro in plain view on the center console, which showed he had direct access to it.

Finally, Mr. Martinez-Castro argues in his traverse that the Court of Appeals never addressed the fact that the State did not test the grocery bags and undercarriage for fingerprints.  But as the Warden correctly contends, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  (ECF No. 7 at PageID # 42) (citing *Jackson v. Virginia,* 443 U.S. 307, 326 (1979)).

Even if I had concluded (which I do not) that a rational trier of fact could not have found Mr. Martinez-Castro guilty beyond a reasonable doubt, on habeas review courts must still defer to the state appellate court's sufficiency determination so long as it is not unreasonable. *White*, 602 F.3d at 710.  Applying the second layer of the "double layer of deference," I do not find the state appellate court's sufficiency determination unreasonable for the reasons set forth above.  Accordingly, I

recommend that this Court dismiss or deny Mr. Martinez-Castro's Ground One claim.

B. **RECOMMENDATION REGARDING CERTIFICATE OF APPEALABILITY**

As amended by AEDPA, 28 U.S.C. § 2253(c)(1) provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "[a] 'substantial showing' requires the applicant to 'demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further.'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996)). The statute requires that certificates of appealability specify which issues are appealable. 28 U.S.C. § 2253(c)(3).

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. "If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." *Id.*; *see also* 28 U.S.C. § 2253(c)(3) ("The certificate of appealability under [§ 2253(c)(1)] shall indicate which specific issue or issues satisfy the showing required by [§ 2253(c)(2)]."). In light of the Rule 11 requirement that the court either grant or deny the certificate of appealability at the time of its final adverse order, a

19

recommendation regarding the certificate of appealability issue is included here.

Here, Mr. Martinez Castro has not made a substantial showing of a denial of a constitutional right for the reasons set forth above.  Because jurists of reason would not find these conclusions debatable, I recommend that no certificate of appealability issue in this case.

## V.      RECOMMENDATION

For the foregoing reasons, I RECOMMEND that the Court DISMISS and/or DENY Mr. Martinez-Castro's petition for a writ of habeas corpus under 28 U.S.C. § 2254.  I also recommend that the Court not grant him a certificate of appealability or conduct an evidentiary hearing.

Dated:  June 13, 2023                                    *s/Jennifer Dowdell Armstrong*
                                                         Jennifer Dowdell Armstrong
                                                         U.S. Magistrate Judge

### NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).